IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HAMPTON ROBINSON, )
)
      Plaintiff, )
) 1:13CV652
    v. )
)
DURHAM PUBLIC SCHOOLS BOARD )
OF EDUCATION )
)
      Defendant. )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

    This case is brought by Plaintiff Hampton Robinson ("Plaintiff") pursuant to Title VII of the Civil Rights Act ("Title VII") and under North Carolina state law for Wrongful Discharge in Violation of North Carolina Public Policy, Assault and Battery, and Negligent Infliction of Emotional Distress ("NIED"). The matter currently before the Court is a Motion to Dismiss [Doc. #9] filed by Defendant Durham Public Schools Board of Education ("Defendant") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Additionally, Plaintiff has requested that the Court dismiss his NIED claim without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil of Procedure. For the reasons discussed below, the Court will grant in part and deny in part Defendant's Motion to Dismiss [Doc. #9]. Furthermore, the Court will grant Plaintiff's request to dismiss his NIED claim without prejudice pursuant to Rule 41(a)(2).

I.     FACTUAL AND PROCEDURAL BACKGROUND

    The factual allegations of Plaintiff's Complaint are taken as true for purposes of Defendant's Motion to Dismiss. Plaintiff is an African-American male and is currently

employed by the Durham County Sherriff's Department ("DCSD") and he has been employed by DCSD since 1991. (Compl. [Doc. #4], ¶¶ 1, 6.) Plaintiff alleges that Defendant employs off-duty police officers as security officers pursuant to an agreement between Defendant and DCSD. (Id. at ¶ 7.) In August 2009, Plaintiff began his employment with Defendant as a "School Resource Officer/Security Officer" ("security officer"). (Id. at ¶ 8.) On January 29, 2013, Plaintiff was assigned to work at Neal Middle School, a school within Defendant's school system. (See id. at ¶¶ 9, 19.) On that same day, between 7:30 a.m. and 8:00 a.m., Plaintiff was in the school's front office, advising two students when Jacqueline Valachovic ("Valachovic"), a Caucasian female and the school's Guidance Counselor, entered the officer, "smacked . . . Plaintiff in the face with her open hand" while stating "you lying son of a b*tch," and then she quickly left the front office. (Id. at ¶¶ 10, 12-13.) Plaintiff alleges that at the time Valachovic smacked him, M. Jill Hall, the school Principal, ("Principal Hall") and Calvin Freeman, the Assistant Principal,[1] and two other employees were present in the front office. (Id. at ¶ 10.) Plaintiff alleges that he did not physically or verbally react to Valachovic after she smacked him. (Id. at ¶ 14.) At the time of Plaintiff's encounter with Valachovic, Plaintiff was wearing his DCDS uniform, which he alleges that he was required to wear while working for Defendant. (Id. at ¶ 11.) At approximately 9:00 a.m. on the same day, Tina Ingram ("Ingram"), Defendant's Head of Security and a Caucasian female, contacted DCSD and asked how she could get Plaintiff removed from working at Neal Middle School. (Id. at ¶ 15.) Ingram contacted DCSD a second time that morning and told DCSD that she "heard that Plaintiff had been dating

---

[1] Plaintiff alleges that Principal Hall is a Caucasian female and Assistant Principal Calvin Freeman is an African-American male. (Compl. at ¶ 10.)

Valachovic and was caught cheating with another Neal Middle School staff member" and that Plaintiff caused a disruption in the school. (Id. at ¶¶ 16, 18.) Plaintiff alleges that DCSD told Ingram that it appeared that Plaintiff was the victim, based on what Ingram told DCSD. (Id. at ¶ 17.) Plaintiff alleges that Ingram requested that Principal Hall recommend that Plaintiff "not be re-employed at any school within [Defendant's] school system." (Id. at ¶ 19.) Plaintiff has not been re-assigned and has not worked for Defendant since January 29, 2013. (Id. at ¶ 20.)

Plaintiff alleges that "immediately prior" to his above-described encounter with Valachovic, Valachovic "confronted an African-American female employee of Neal Middle School, Tina Ingram[2] and inquired of the relationship she had with Plaintiff." (Id. at ¶ 21.) Plaintiff alleges that the female employee that Valachovic confronted told Valachovic that she and Plaintiff were friends and that she has not pursued Plaintiff. (Id. at ¶ 22.) Plaintiff alleges that Valachovic became "extremely agitated" and informed the female employee that Plaintiff "had only one option" and that Valachovic was going to request that Principal Hall reassign Plaintiff to another school. (Id. at ¶ 23.) Plaintiff alleges that the confrontations between Valachovic and the female employee and between Plaintiff and Valachovic were videotaped. (Id. at ¶ 24.) Plaintiff alleges that despite the above encounters, Valachovic is still employed with Defendant. (Id. at ¶ 25.) Plaintiff alleges that Defendant has treated him and other African-

---

[2] As Plaintiff has acknowledged, this reference, in the Complaint, to Tina Ingram being the African-American female employee that Valachovic confronted is an error as Plaintiff has previously alleged that Tina Ingram is a different person, specifically, Defendant's Head of Security and a Caucasian female. (See Pl.'s Resp. [Doc. #14], at 3 n.1; Compl. at ¶ 15.) Plaintiff has not amended his Complaint or otherwise informed the Court as to the name of the African-American female employee that Valachovic confronted. As such, the Court will hereinafter refer to this person as an "African-American female employee" or, alternatively, a "female employee."

3

American employees employed as security officers differently than Caucasian co-workers. (Id. at ¶ 27.) Specifically, Plaintiff alleges that Defendant failed to terminate a Caucasian security officer after Defendant discovered that the officer was "caught in a city park" with a teenage student from the high school for which the Caucasian officer was employed. (Id. at ¶ 28.) Plaintiff also alleges that Defendant, "by and through Principal Hall, had a prior African-American [security officer] removed from Neal Middle School, without appropriate investigation" and without justification. (Id. at ¶ 29.)

On February 21, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. at ¶ 31; see EEOC Charge [Doc. #10-2].) The EEOC Charge complains of race-based discrimination. (Compl. at ¶ 32; EEOC Charge [Doc. #10-2].) The EEOC mailed its Notice of Right-to-Sue on or around March 12, 2013 and Plaintiff received the Notice on March 16, 2013. (Compl. at ¶ 32.) Plaintiff originally filed his Complaint in the Durham County Superior Court and Defendant removed the action to this Court on August 9, 2013. (See Notice of Removal [Doc. #1].)

II. STANDARD OF REVIEW

Defendant's Motion to Dismiss [Doc. #9] is filed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A motion made pursuant to Rule 12(b)(6) " 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.' " Id. at 243-44 (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),

the Fourth Circuit has directed that courts " 'take the facts in the light most favorable to the plaintiff,' but '[they] need not accept the legal conclusions drawn from the facts,' and '[they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.' " Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955) (citations omitted)). Thus, dismissal of a complaint is proper only where plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.' " Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 683, 129 S. Ct. 1937).

5

III.   DISCUSSION

   A.   Title VII

Plaintiff has alleged a disparate treatment claim against Defendant, asserting that he was terminated from working within Defendant's school system because of his race. To withstand a Rule 12(b)(6) motion in disparate treatment cases, Plaintiff must plead: "(1) [he] is a member of a protected class; (2) [he] has satisfactory job performance; (3) [he] was subjected to adverse employment action; and (4) similarly situated employees outside [his] class received more favorable treatment." Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 F. App'x 351, 353 (4th Cir. 2009) (citing Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007), cert. denied, —U.S. —, 128 S. Ct. 995, 169 L. Ed. 2d 734 (2008)). It does not appear that the first two elements of Plaintiff's disparate treatment claim are at issue. Indeed, Plaintiff has alleged that he is an African American (Compl. at ¶ 5) and that he "continuously and satisfactorily maintained [his] employment" with Defendant until January 29, 2013, the day he was terminated (id. at ¶ 8). Additionally, Defendant does not argue that Plaintiff's termination from his position with Defendant was not an adverse employment action. However, Defendant does argue that it did not have the authority to terminate Plaintiff. Specifically, Defendant asserts that Plaintiff's Title VII claim fails because "the facts alleged in the Complaint and the documents referenced therein demonstrate that [Defendant] did not take, and could not have taken an adverse employment action against Plaintiff" and Defendant argues that the authority to terminate Plaintiff rested with DCSD. (Def. Mem. [Doc. #10], at 5.) Defendant also contends that Plaintiff has not alleged that he was terminated by Defendant. However, Plaintiff responds by arguing that the documents can be read to show that Defendant had authority over

6

Plaintiff. Plaintiff also argues that he has pled that he worked for and he was paid by Defendant until Defendant's actions led to "the cessation of such arrangement" and that "[i]f . . . Defendant lacked authority to perform these actions, it cannot be inferred from the facts alleged nor can it be determined from the [a]greement." (Pl.'s Resp. [Doc. #14], at 7.) The Court will address the parties' arguments in turn.

Defendant points to the three documents to support its argument that it did not have the authority to terminate Plaintiff and that it did not actually terminate Plaintiff: the Complaint and the documents attached to its Motion to Dismiss, specifically, the Memorandum of Understanding ("MOU") [Doc. #10-1]—which is an agreement between DCSD and Defendant for DCSD to provide off-duty law enforcement services to Defendant—and Plaintiff's EEOC Charge [Doc. #10-2].[3] As to the MOU, Defendant is correct in asserting that the MOU states

---

[3] As Defendant asserts, the Court may consider a document attached to Defendant's Motion to Dismiss if (1) the document is "integral to and explicitly relied on in the complaint" and (2) if the plaintiff "does not contest its authenticity." See Alexander v. City of Greensboro, 1:09-CV-934, 2011 WL 13857 (M.D.N.C. Jan. 4, 2011) (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (alterations in the original) (quoting Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999))). In his Complaint, Plaintiff references "an agreement between [Defendant] and DCSD" to employ off-duty law enforcement officers (Compl. at ¶ 7) to describe his employment relationship with Defendant, and Plaintiff relies on the EEOC Charge (id. at ¶ 31) to satisfy the prerequisite requirement to filing a Title VII suit in this Court. See 42 U.S.C. § 2000e-5(e), (f). Additionally, Plaintiff does not appear to contest the authenticity of either the MOU or the EEOC Charge, as he relies on them in his Response [Doc. #14]. As such, the Court will consider these documents in ruling on Defendant's instant Motion. See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014) (acknowledging that the court may "consider documents incorporated into the complaint by reference . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." (internal quotation marks and citations omitted)); Reed v. Md. Dep't of Human Res., No. ELH-12-0472, 2013 WL 489985, at *4-5 (D. Md. Feb. 7, 2013) (finding that the court may consider the EEOC charge attached to the defendant's motion to dismiss because (1) the plaintiff relied on the charge in his complaint and (2) the EEOC charge was subject to judicial notice because it was a public record).

(1) DCSD "coordinates the availability of deputies seeking to provide off-duty law enforcement services," (2) "off-duty deputies working pursuant to [the MOU] are acting as law enforcement personnel," (3) "[i]t is specifically understood and agreed that the assignment of off-duty deputies pursuant to [the MOU] is subject to final approval by the Internal Affair commander," and (4) DCSD "shall promptly notify [Defendant] when a request [for a deputy's services] is not approved." (MOU [Doc. #10-1], at ¶¶ 2-4, 8.) These provisions, read in isolation, would tend to negate Plaintiff's argument that Defendant had the requisite authority over Plaintiff's employment. However, Plaintiff's contention has merit to the extent he asserts that the MOU also states that Defendant "agrees to pay for the assignment of each off-duty deputy at the agreed upon hourly rate." (Id. at ¶ 5.) Additionally, the MOU states that "[i]n the event the employee[ ] does not appear as scheduled, it is understood that DCSD assumes no liability therefore." (Id. at ¶ 8.) These, provisions could lend themselves to the conclusion that Defendant had some degree of control or authority over Plaintiff's employment, and as an extension, it could demonstrate Defendant's ability to terminate Plaintiff. See Williams v. Grimes Aerospace Co., 988 F. Supp. 925, 934 (D.S.C. 1997) ("A defendant may be held liable under Title VII if it 'exercises substantial control over significant aspects of the compensation, terms, conditions, or privileges of plaintiff's employment.'"). Also, the MOU does not explicitly negate Defendant's authority to terminate Plaintiff. Furthermore, in looking at the EEOC Charge, Defendant argues that because the EEOC Charge states, "Defendant contacted [Plaintiff's] employer [(DCSD)] and asked them [sic] to remove [Plaintiff] from working at Neal Middle School," that it is clear that Defendant did not have the authority to terminate Plaintiff and that Defendant did not actually terminate Plaintiff. (EEOC Charge [Doc. #10-2], at 1.)

8

However, the Court does not read the EEOC Charge as narrowly as Defendant suggests. This is particularly true as the EEOC Charge also includes statements to suggest that Plaintiff was employed by Defendant, to the extent it states that Plaintiff "worked for [Defendant], who has a contract with my employer, [DCSD]." (Id.) Finally, Defendant argues that Plaintiff does not allege in his Complaint that Defendant terminated Plaintiff. However, the Complaint does allege that Ingram, Defendant's Head of Security, advised Principal Hall to make sure to recommend that Plaintiff not be re-employed by any school within Defendant's school system and thereafter, Plaintiff has never been re-employed by Defendant or any school within Defendant's school system. Moreover, Defendant's contentions that it did not have the authority to terminate Plaintiff and that it did not actually terminate Plaintiff's employment would involve resolution of disputes as to the merits of Plaintiff's claim, an exercise that the Court must avoid at the motion to dismiss stage. See Edwards, 178 F.3d at 243. Indeed, at the 12(b)(6) motion to dismiss stage, the Court must confine its analysis to determining whether Plaintiff has alleged sufficient facts to support his claim. Thus, in construing the facts in the light most favorable to Plaintiff, as the Court must do on a 12(b)(6) motion to dismiss, the Court finds that Plaintiff has sufficiently pled facts to demonstrate that Defendant exercised authority over Plaintiff and that Defendant took an adverse employment action when it recommended that Plaintiff not be re-employed by any school in Defendant's school system and, as a result, Plaintiff was terminated and was not re-employed by any school within Defendant's school system.

Finally, Defendant generally contends that Plaintiff "has not alleged any relevant facts in support of his claim of racial discrimination." (Def. Mem. [Doc. #10], at 6.) The Court notes that the "Supreme Court has cautioned, . . . a Title VII plaintiff is not required to plead facts that

constitute a prima face case." Miller v. Carolinas Healthcare Sys., 561 F. App'x 239, 241 (4th Cir. 2014) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). Indeed, Plaintiff is only required to plead the elements of a disparate treatment claim. See Prince-Garrison, 317 F. App'x at 353. In this case, Plaintiff has alleged that he is a member of a protected class because he is African American, that he "continuously and satisfactorily maintained [his] employment" with Defendant until he was terminated (id. at ¶ 8), that an adverse employment action was taken against him when he was terminated by Defendant, and that similarly-situated Caucasian employees received more favorable treatment than Plaintiff or other African-American employees (Compl. at ¶¶ 27-29). Thus, the Court finds that Plaintiff has adequately alleged facts to support his disparate treatment claim and the Court will deny Defendant's Motion to Dismiss as to this claim.

B.  Wrongful Discharge

"North Carolina is an employment-at-will state." Kurtzman v. Applied Analytical Indus., 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). However, the North Carolina Supreme Court recognizes a public policy exception to the employment-at-will doctrine. Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 570, 515 S.E.2d 438, 440 (1999) (citing Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989)). Upon suffering a violation of an express policy declaration contained in the North Carolina General Statutes, an individual can bring a wrongful discharge claim under this public policy exception. Amos v. Oakdale Knitting Co., 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992). Plaintiff has alleged two bases for his claim that he was wrongfully discharged in violation of public policy: (1) Plaintiff was terminated because of his race and (2) Plaintiff was terminated because he was a victim of a crime, specifically, the

10

criminal offense of assault and battery. The Court will discuss these claims in turn.

Plaintiff first claims he was wrongfully discharged because of his race in violation of North Carolina public policy. The relevant legislative declaration, N.C. General Statute § 143-422.2, states:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.
>
> It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

N.C. Gen. Stat. § 143-422.2 (2013). Section 143-422.2 may form the basis for a wrongful discharge claim. See, e.g., McLean v. Patten Cmty., Inc., 332 F.3d 714, 720-21 (4th Cir. 2003) (reinforcing prior holdings that a violation of § 143-422.2 may be the basis for a wrongful discharge claim); Simmons v. Chemol Corp., 137 N.C. App. 319, 322, 324, 528 S.E.2d 368, 370, 371 (2000) (affirming summary judgment in favor of defendant while recognizing the cognizability of a wrongful discharge claim based on a violation of § 143-422.2). Defendant contends that Plaintiff's wrongful discharge claim should be dismissed for the same reasons that his Title VII claim should be dismissed. As previously discussed, Plaintiff has satisfied the requisite pleading standards under Title VII to survive Defendant's Motion to Dismiss pursuant to Rule 12(b)(6). Therefore, as North Carolina courts apply Title VII principles of law to wrongful discharge claims under § 143–422.2, and federal pleading standards apply to this claim as well, Plaintiff has also satisfied the requisite pleading standards for the racial discrimination

11

aspect of his wrongful discharge claim. See Burroughs v. ScottMadden, Inc., No. 5:07-cv-193-F, 2009 WL 9043945, at *4 n.4 (E.D.N.C. April 9, 2009) (dismissing the plaintiff's claim of wrongful discharge in violation of § 143.422.2 for failure to state a claim, because her complaint fails to state any factual basis for a Title VII claim of discriminatory discharge) (citing Gibson, 308 N.C. at 141, 301 S.E.2d at 85 (adopting evidentiary standards and principles of law set forth in Title VII to analyze a plaintiff's claim for wrongful discharge in violation of § 143–422.2)). As such, the Court will deny Defendant's Motion to Dismiss Plaintiff's wrongful discharge claim, to the extent Plaintiff has alleged that he was terminated because of his race in violation of public policy.

Second, Plaintiff argues that he was wrongfully discharged for being a victim of an assault and battery and he argues that such a discharge violates North Carolina public policy. Under the public policy exception, Plaintiff "has the burden of pleading . . . that [his] dismissal occurred for a reason that violates public policy." Salter v. E & J Healthcare, Inc., 155 N.C. App. 685, 693, 575 S. E.2d 46, 51 (2003). "The public policy exception allows an at-will employee, 'discharged from his employment in retaliation for (1) his refusal to perform an act prohibited by law, or (2) his performance of an act required by law' to bring a common law tort claim for wrongful discharge." Clark v. United Emergency Servs., Inc., 189 N.C. App. 787, 661 S.E.2d 55 (2008) (unpublished table decision) (quoting Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 498, 340 S.E.2d 116, 126 (1986)). "The public policy exception is a 'narrow exception,' that is violated when an employee is fired in contravention of express policy declarations contained in North Carolina's statutes. Marsh v. CBD Media Corp., No. 3:09cv289-RJC, 2009 WL 3151946, at *4 (W.D.N.C. Sept. 24, 2009) (internal citations omitted). In Imes

12

v. City of Asheville, the plaintiff alleged that he was wrongfully discharged in violation of public policy when his employer terminated him because he was the victim of domestic violence. 163 N.C. App. 668, 669, 594 S.E.2d 397, 398, aff'd, 359 N.C. 182, 606 S.E.2d 117 (2004). The North Carolina Court of Appeals determined that the plaintiff failed to state a claim for wrongful discharge in violation of public policy because the plaintiff did not "allege that [his employer's] conduct violated any explicit statutory or constitutional provision, nor d[id he] allege [that his employer] encouraged [the] [p]laintiff to violate any law that might result in potential harm to the public." Id. at 671, 594 S.E.2d at 399. Furthermore, the court of appeals determined that, while the North Carolina General Statutes provide for protections for domestic violence victims, they did not "establish victims of domestic violence as a protected class of persons or extend employment security status to such persons." Id. Thus, the court determined that the plaintiff failed to state a claim for wrongful discharge in violation of public policy for being a victim of domestic violence. Id. at 672, 594 S.E.2d at 400; cf. Griggs v. Casual Corner Grp., Inc., No. 3:02CV277, 2005 WL 1983888, at *13 (W.D.N.C. Aug. 10, 2005)("In other words, neither the statute criminalizing assault, nor the laws creating civil liability for assault, express any public policy concerning retaliation against someone who reports such acts."). Similarly, in the case currently before the Court, Plaintiff has alleged that he was the victim of an assault and battery. However, Plaintiff has failed to allege that Defendant's conduct violated any "explicit statutory or constitutional provision" and Plaintiff has failed to allege that Defendant encouraged Plaintiff to "violate any law that might result in potential harm to the public." While Plaintiff has generally pointed to Chapter 14 of the North Carolina General Statutes in alleging that North Carolina makes it a criminal offense to commit an assault and battery (see Compl. at ¶ 45),

13

Plaintiff has not argued, or established, that victims of assault and battery are a "protected class of persons" or that "employment security status" is extended to such persons. As such, the Court finds that Plaintiff has failed to plead that he was terminated in violation of public policy, to the extent he alleges that he was terminated for being a victim of assault and battery, see Salter, 155 N.C. App. at 693, 575 S.E.2d at 51, and the Court will decline to extend North Carolina's "narrow" public policy exception to the facts of this case. Thus, the Court will grant Defendant's Motion to Dismiss, to the extent Plaintiff contends that he was terminated for being a victim of assault and battery in violation of public policy.

    C.    Assault and Battery

Plaintiff has alleged that Valachovic, an employee of Defendant, walked up to Plaintiff and smacked him, which Plaintiff argues is an assault and battery under North Carolina law. Defendant does not dispute that Valachovic's conduct constitutes an assault and battery under North Carolina law. Instead, Defendant argues that Defendant cannot be liable for the actions of Valachovic. An employer may be liable for an employee's tortious conduct under the theory of respondeat superior in three situations: (1) when the employee's act is expressly authorized by the employer; (2) when the employee's act is committed within the scope of his employment and in furtherance of the employer's business; or (3) when the employee's act is ratified by the employer. Stanley v. Brooks, 112 N.C. App. 609, 613, 436 S.E.2d 272, 274 (1993) (citing Medlin v. Bass, 327 N.C. 587, 593, 398 S.E.2d 460, 463 (1990)). There is no contention that Defendant expressly authorized Valachovic's conduct[4] and the parties only address the scope of

---

[4] An intentional tort is "expressly" authorized when employers "instruct or directly authorize their employees to wrongfully invade the personal property rights of others." West v. F.W. Woolworth Co., 215 N.C. 211, 1 S.E.2d 546 (1937).

employment and ratification prongs. As such, the Court's analysis will be limited to those two prongs.

First, Defendant argues, "it is clearly established that assault and battery are categorically outside the course and scope of employment for a guidance counselor or other similar school system employee." (Def.'s Mem. [Doc. #10], at 9.) In addressing Defendant's argument, the Court does find that Plaintiff's Complaint fails to plausibly plead facts that would show that Valachovic acted within the scope of her employment when she smacked Plaintiff in the face. The Fourth Circuit, in analyzing North Carolina case law, has stated that when presented with the issue of whether "an intentional assault by an employee was within the scope of employment so as to impose vicarious liability on the employer," courts must discern whether the employee was furthering the employer's business objectives or whether the employee was serving his or her own personal antipathy. Borneman v. United States, 213 F.3d 819, 828-29 (4th Cir. 2000) (citing North Carolina cases). Thus, if the intentional tort is committed, not as a means or for the purpose of performing the work the employee was employed to do, but instead "in a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of h[er] own," then the employer is not liable. Medlin, 327 N.C. at 593, 398 S.E.2d at 464 (quoting Robinson v. McAlhaney, 214 N.C. 180, 183, 198 S.E. 647, 650 (1938)). Furthermore, "[i]ntentional tortious acts . . . are rarely considered to be within the scope of an employee's employment." Phelps v. Vassey, 113 N.C. App. 132, 135, 437 S.E.2d 692, 694-95 (1993). Even though Plaintiff has alleged that Valachovic's alleged tortious conduct was committed while she and Plaintiff were at work, Plaintiff has not pointed to (and the Court has not found any) facts

15

sufficient to support the contention that Valachovic was acting within the scope of her employment[5] or in the furtherance of any business purpose for Defendant in committing the acts. Rather, it seems clear that the matters alleged fall into the category of intentional tortious acts designed to carry out Valachovic's own personal animosity, and thus, they were not within the course and scope of her employment. Specifically, Plaintiff has alleged that "immediately prior" to Valachovic smacking Plaintiff, Valachovic confronted an African-American female employee and inquired if the female employee was having a relationship with Plaintiff. (Compl. at ¶ 21.) Plaintiff also alleged that Valachovic was "extremely agitated" after speaking with the female employee and Valachovic then proceeded to smack Plaintiff in his face and call him a "lying son of a b*tch." (Compl. at ¶¶ 13, 21, 23.) Because Valachovic's actions, as alleged, were plainly committed for her own "independent purpose" and they could not conceivably advance any purpose of Defendant, Valachovic's employer, her acts were beyond the scope of her employment as a matter of law.

Second, Defendant argues that Plaintiff has not alleged any facts to support a claim that Defendant ratified Valachovic's actions. To establish that an employer ratified a tortious act by an employee, Plaintiff must show that the employer "had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, show[ed] an intention to ratify the act." Hogan, 79 N.C. App. at 492, 340 S.E.2d at 122. Plaintiff has failed to allege facts to support a claim that Defendant ratified the acts of

---

[5] The Court need not accept Plaintiff's legal conclusion that Valachovic acted within the scope of her employment, when Plaintiff has failed to allege facts that support such a conclusion. See Eastern Shore Mkts., 213 F.3d at 180.

16

Valachovic. Plaintiff has alleged that Valachovic previously confronted a female employee about her relationship with Defendant and thus "Defendant knew or should have known" that Valachovic was capable of smacking Plaintiff. (Compl. at ¶¶ 20-23, 57.) However, Plaintiff has also alleged that Valachovic confronted the female employee "immediately prior" to smacking Plaintiff. (Compl. at ¶ 21.) Additionally, Plaintiff has not alleged that Defendant knew that Valachovic confronted the female employee before Valachovic smacked Plaintiff. Plaintiff has not alleged, for example, that a supervisor with authority to control Defendant's business knew that Valachovic engaged in previous confrontational behavior and that such a supervisor, by way of any act or omission, ratified Valachovic's conduct.[6] See Brown v. Burlington Indus., Inc., 93

---

[6] Plaintiff argues that the Court should allow Plaintiff's assault and battery claim to continue, on a ratification theory, because it is impossible at the motion to dismiss stage, and without the benefit of discovery, to determine if (1) "Valachovic confronted other employees regarding their relationship with Plaintiff," (2) Defendant's video cameras "captured similar instances of behavior, putting a reasonable employer on notice," or (3) Defendant "knew or should have known that Valachovic was susceptible to assaultive conduct on another employee." However, the Court notes that Plaintiff has not alleged facts in the Complaint to support these purported findings and the Court "cannot rely on facts alleged in a Plaintiff's response brief when evaluating the legal sufficiency of a complaint on a motion to dismiss." Aerospace Mfg., Inc. v. Clive Merch. Grp., LLC, 1:05CV00597, 2006 WL 1476906, at *4 n.4 (M.D.N.C. May 23, 2006); see Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) ("Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under Rule 12(b)(6) motion, we assume the truth of all facts alleged *in* the complaint . . . .") (emphasis added) cited by Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009); see also Beck v. City of Durham, 129 F. Supp. 2d 844, 855 (M.D.N.C. 2000) ("Because the Court's consideration of [the d]efendants' Motions to Dismiss is limited to the allegations stated in the Complaint, [the p]laintiff cannot attempt to create claims for retaliation and constructive discharge in his response to Motions to Dismiss."). Furthermore, the Court "examines the factual allegations contained [in the Complaint] to determine[ ] if they reasonably indicate that discovery will yield evidence of all of the elements of the plaintiff's claim. Redd v. McDowell Cnty. Bd. of Educ., 976 F. Supp. 2d 838, 850 (S.D.W. Va. 2013), aff'd, 561 F. App'x 278 (4th Cir. 2014). However, it is not a solution to request that the Court "unlock the doors of discovery" when [P]laintiff is armed with nothing more than conclusions. Iqbal, 556 U.S. at 678-79, 129 S. Ct. 1937. As such, for the reasons stated above and herein, the Court finds that Plaintiff has failed to plausibly plead an assault and battery claim, based on a ratification theory, and the

N.C. App. 431, 437-38, 378 S.E.2d 232, 236 (1989) (concluding that the defendant ratified an employee's conduct when the plaintiff told her department manager that the employee sexually harassed the plaintiff and, per company policy, it was the duty of the department manager to report sexual misconduct to "higher authorities"); Hogan, 79 N.C. App. at 492, 340 S.E.2d at 122 (finding that the defendant ratified an employee's conduct when the plaintiff informed the defendant's general manager, on several occasions, that the employee sexually harassed the plaintiff and the general manager declined to intervene to prevent further offensive conduct). As such, Plaintiff's argument that Defendant ratified Valachovic's conduct also fails.

As the Court has determined that Plaintiff has failed to state an assault and battery claim against Defendant, under a theory of respondeat superior–because the Court has concluded that Plaintiff has failed to plausibly allege facts that show that Valachovic acted within the scope of her employment when she smacked Plaintiff or that Defendant ratified Valachovic's conduct–, the Court will grant Defendant's Motion to Dismiss this claim.

    D.    NIED

In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff concedes that his NIED claim should be dismissed at this time and requests that such a claim be dismissed without prejudice under Rule 41(a)(2). (See Pl.'s Resp. [Doc. #14], a 4 n.2.) However, Defendant requests that Plaintiff's NIED claim be dismissed with prejudice. (Def.'s Reply [Doc. #16], at 6.) Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that, "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The primary purpose of the rule is to "freely

---

Court will favorably consider Defendant's Motion to Dismiss on this issue.

permit voluntary dismissals while protecting the nonmovant from unfair treatment." Gross v. Spies, 133 F.3d 914, 1998 WL 8006, at *5 (4th Cir. 1998) (unpublished table decision). Generally, a voluntary motion to dismiss without prejudice under Rule 41(a)(2) "should not be denied absent plain legal prejudice to the defendant." Id. Factors a district court should consider in ruling on Rule 41(a)(2) motions are: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." Id. Defendant has not argued that it would be prejudiced by Plaintiff's request for a Rule 41(a)(2) dismissal without prejudice but instead Defendant only asserts that Plaintiff's voluntary dismissal should be with prejudice because Plaintiff's Complaint fails to state a NIED claim. However, in assessing the Fourth Circuit factors in ruling on a Rule 41(a)(2) motion, it appears that the factors weigh in favor of a dismissal without prejudice. Although Plaintiff has not explained his reason for requesting a dismissal of his NIED claim, in this case (factor 3), the Court notes that Defendant has not started preparing for trial, or even began to conduct discovery, in this case (factor 1); there does not appear to be any significant delay in Plaintiff's request for the dismissal (factor 2); and the request for dismissal is at the motion to dismiss stage, an early stage of litigation (factor 4). As there appears to be a lack of any "plain legal prejudice" to Defendant, the Court will dismiss Plaintiff's NIED claim without prejudice.

IV. CONCLUSION

For the reasons set forth herein, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [Doc. #9] is GRANTED IN PART AND DENIED IN PART. Specifically,

Defendant's Motion to Dismiss Plaintiff's Assault and Battery claim, in its entirety, and Defendant's Motion to Dismiss Plaintiff's Wrongful Discharge claim in Violation of North Carolina Public Policy, to the extent Plaintiff has alleged that he was terminated for being the victim of an assault and battery, is HEREBY GRANTED. However, Defendant's Motion to Dismiss Plaintiff's Title VII claim and Defendant's Motion to Dismiss Plaintiff's Wrongful Discharge claim in Violation of North Carolina Public Policy, to the extent Plaintiff has alleged that he was terminated because of his race, is HEREBY DENIED. Finally, Plaintiff's request to dismiss his NIED claim is HEREBY GRANTED and such a dismissal is WITHOUT PREJUDICE pursuant to Rule 41(a)(2) of the Federal Rules of Civil of Procedure.

This the 7th day of August, 2014.

_____
United States District Judge